AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Black Apple watch<br>2025250600014701-0003<br>("Target Device 2") | )<br>)<br>)<br>)<br>)<br>) |

Case No. **'24 MJ4819**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec 963 | Conspiracy to import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Eric Velazquez, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: _____December 31, 2024_____

_____
*Judge's signature*

City and state: San Diego, California

Hon. Valerie E. Torres, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Apple watch
> Seizure No. 2025250600014701-0003
> (**"Target Device 2"**)

**Target Device 2** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

## **ATTACHMENT B**
### ITEMS TO BE SEIZED

Authorization to search the electronic devices described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the electronic devices for evidence described below. The seizure and search of the electronic devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the electronic devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 16, 2024 up to and including December 30, 2024:

    a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

1

## **AFFIDAVIT**

2

I, Special Agent Eric Velazquez, being duly sworn, hereby state as follows:

3

## **INTRODUCTION**

4

1.    I submit this affidavit in support of an application for a warrant to search the

5

following electronic devices, (Collectively, the **"Target Devices"**):

6

7

Silver iPhone 16

8

Seizure No. 2025250600014701-0002

9

(**"Target Device 1"**)

10

11

Black Apple watch

12

Seizure No. 2025250600014701-0003

13

(**"Target Device 2"**)

14

15    as further described in Attachments A-1 and A-2, and to seize evidence of crimes,

16    specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as

17    further described in Attachment B. The requested warrant relates to the investigation and

18    prosecution of Daniel Anthony GONZALEZ Martinez ("Defendant") for importing

19    approximately 3.24 kilograms (7.14 pounds) of cocaine from Mexico into the United

20    States.    The **Target Devices** are currently in the custody of Homeland Security

21    Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

22    2.    The information contained in this affidavit is based upon my training,

23    experience, investigation, and consultation with other members of law enforcement.

24    Because this affidavit is made for the limited purpose of obtaining a search warrant for the

25    **Target Devices**, it does not contain all the information known by me or other agents

26    regarding this investigation. All dates and times described are approximate.

27

28

## BACKGROUND

3.      I have been employed as a Special Agent with Homeland Security Investigations (HSI) since August of 2016. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.      I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and electronic devices. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery

of the narcotics to a destination within the United States.

6.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones and electronic devices (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones and electronic devices of individuals involved in the importation of narcotics may yield evidence:

a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

7.    On December 30, 2024, at approximately 7:20 PM, Daniel Anthony GONZALEZ Martinez ("GONZALEZ"), a United States citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry Pedestrian Facility.

8.    A Customs and Border Protection Officer (CBPO) received two negative Customs declarations from GONZALEZ.  GONZALEZ stated he was crossing the border to go to San Diego, California for work. The CBPO received a computer-generated alert for GONZALEZ and escorted him to pedestrian secondary for further inspection.

9.    In secondary, the CBPO conducted a personal search of GONZALEZ and felt a brick like object on GONZALEZ's lower back.  A Canine Enforcement Team was conducting post-primary operations and responded to a request for a canine screen. The Human and Narcotic Detection Dog subsequently alerted to GONZALEZ's lower back.

10.    Further inspection of GONZALEZ resulted in the discovery of 3 packages concealed around GONZALEZ's lower back area and secured with a back brace, with a total approximate weight of 3.24 kgs (7.14 lbs).  A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

11.    GONZALEZ was arrested at approximately 7:52 PM.

12.    GONZALEZ was arrested and charged with a violation of Title 21, United States Code, Sections 952 and 960, importation of a controlled substance.

13.    The **Target Devices** were found and seized by a CBPO who was tasked to perform a secondary inspection and inventory all the property seized from the Defendant. **Target Device 1** was found by the CBPO in Defendant's front pocket, and **Target Device 2** was found within his property.  While investigators obtained personal identifiable information from Defendant, Defendant was shown **Target Device 1** and he identified **Target Device 1** as belonging to him.

14.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**.  In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Devices** to communicate with others to further the importation of illicit narcotics into the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

15.     Based upon my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on December 16, 2024 up to and including December 30, 2024.

## METHODOLOGY

16.     It is not possible to determine, merely by knowing the cellular telephone's or the electronic device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Electronic devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which

disables access to the network.  Unlike typical computers, many cellular telephones and electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone and electronic device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17.    Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and electronic device and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19.    Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

///
///
///
///
///
///
///
///

1

## CONCLUSION

2        20.    Based on the facts and information set forth above, I submit there is probable

3   cause to believe that a search of the **Target Devices** will yield evidence of Defendant's

4   violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I

5   request that the Court issue a warrant authorizing law enforcement to search the items

6   described in Attachments A-1 and A-2, and seize the items listed in Attachment B using

7   the above-described methodology.

8

9

10

11   I swear the foregoing is true and correct to the best of my knowledge and belief.

12

13                                         _____

14                                         Special Agent Eric Velazquez
                                           Homeland Security Investigations
15

16   Sworn and attested to under oath by telephone, in accordance with Federal Rule of
     Criminal Procedure 4.1, this 31st day of December 2024.
17

18

19   _____
     Hon. Valerie E. Torres
20   United States Magistrate Judge

21

22

23

24

25

26

27

28